## Pepper Pike v. Hirschauer
### Case No. 56963
### Cuyahoga County, (8th)
### Decided February 1, 1990
[Cite as 1 AOA 286]

*For Appellants, Gregory M. Lichko, Thomas J. Intili, Kohrman Jackson & Krantz, One Cleveland Center-20th Floor, 1375 E. Ninth Street, Cleveland, Ohio 44114, Michael Gavin, 2150 Illuminating Building, 55 Public Square, Cleveland, Ohio 44113,*

*For Appellees, Robert L. Musser, Christopher L. Gibbon, Amy Berman Hogan, Walter, Haverfield, Buescher & Chockley, 1215 Terminal Tower, Cleveland, Ohio 44113,*

*For Amicus Curiae, Thomas R. Kelley; Reminger & Reminger Co., L.P.A.; The 113th St. Clair Building; Cleveland, Ohio 44114.*

ANN McMANAMON, J.,

Certain residents of Woodleigh Drive ("the owners") in Pepper Pike ("the City") challenge an appropriation order by the probate court taking approximately 75 feet from the rear of each of their properties. It is the owners' position that the City abused its discretion in acceding to the private interests of vocal residents on Creekside Drive, also in the City. The owners argue that the decision of the probate court is against the manifest weight of the evidence. We find upon review, that the owners' sole assignment of error is not well taken and affirm.

Consolidated with these appropriation matters in this court is an appeal by a Pepper Pike taxpayer ("the taxpayer") from an unsuccessful injunction action in the general division of the common pleas court, which sought to prevent the City from funding acquisition of the Woodleigh Drive property. The taxpayer urges us to determine that the adjudication of his claim by granting summary judgment to the City was erroneous. We find that it was not and affirm the judgment of the common pleas court.

A group styled Neighborhood Committee of Daisy Hill has file *amicus curiae* briefs in both cases.

I

The owners challenge manifest weight of the evidence.

On February 10, 1988, the Pepper Pike City Council enacted Resolution No. 1988-05 declaring its intent to appropriate property for a service drive to the Pepper Pike Waste Water Treatment Plant East ("the treatment plant"). By Ordinance No. 1988-08 the City appropriated the property now in dispute for this purpose. The owners challenged the take in three appropriation petitions which were consolidated and tried to the probate court. The court entered judgment for the City, ruling that the owners failed to show the City's action was arbitrary, unreasonable or capricious. Later, a jury awarded the owners compensation for the appropriated land.

Evidence adduced at trial reveals that the city council initially considered constructing a service drive to the plant in 1974 but decided to continue to use its access route on Creekside Drive. In 1985, the Ohio Environmental Protection Agency ("Ohio E.P.A.") advised the City that the treatment plant required expansion and told the City to anticipate enlarging the facility every five to seven years. Eventually, the plant is expected to serve two-thirds of the sanitary sewage treatment needs of the city. Council again considered constructing a service driveway from State Route 91, S.O.M. Center Road, direct to the treatment plant.

In Resolution No. 1988-05 the city council declared its intent to appropriate the defendants' properties for a service way to the treatment plant, stating: (1) the development of the facility caused increased traffic on Creekside Drive, especially during construction periods; (2) Creekside Drive was not designed for truck traffic and at some places a car and truck cannot pass while both remain on the pavement; and (3) because Creekside Drive is narrow and without sidewalks it is dangerous and difficult for concurrent auto and pedestrian travel. The council declared that it was necessary and advisable for the public health, safety and welfare to construct a second access way to the plant thereby eliminating a danger to pedestrian and auto traffic, preventing damage to Creekside Drive, and making the plant accessible by an alternate route.

The owners maintain that the council's

rationale is a sham and that the City abused its discretion to placate a vocal special interest group of Creekside Drive residents. The owners argue that acquisition of their land was unnecessary.

In determining the questions of the right and necessity for an appropriation, the property owner bears the burden of proving that neither the right nor the necessity exists. R.C. 163.09(B). See, also, *Ohio Edison Co. v. Carroll* (1984), 14 Ohio App. 3d 421; *Bd. Of Edn. v. Holding Corp. of Ohio* (1971), 29 Ohio App. 2d 114; *Ferenez v. City of Toledo* (Dec. 30,1 1988), Lucas App. No. L-87-379, unreported. The decision of a legislative body to appropriate a particular piece of property is afforded great deference by courts because it is presumed that the legislative body is familiar with local conditions and best knows community needs. *Bradford Village Condominium Unit Owners Assn. v. Upper Arlington* (1983), 12 Ohio App. 3d 120; *Holding Corp. of Ohio, supra*; *Ferenez, supra*. See, also, *Wilson v. Cincinnati* (1976), 46 Ohio St. 2d 138; *Porter v. Oberlin* (1965), 1 Ohio St. 2d 142; *Allion v. City of Toledo* (1919), 99 Ohio St. 416.

A resolution or ordinance of an appropriating body which declares the necessity for the appropriation "shall be *prima facie* evidence of such necessity in the absence of proof showing an abuse of discretion * * *" by the body determining such necessity. R.C. 163.09)(B). See, also, *State, ex rel. Allerton Parking Corp., v. Cleveland* (1965), 4 Ohio App. 2d 57; *Holding Corp. of Ohio, supra*. In addition it is well-established that the determination of what constitutes a public purpose is primarily the function of a municipality's legislative body. *State, ex rel. Gordon, v. Rhodes* (1951), 156 Ohio St. 81, paragraph two of the syllabus; *Grisanti v. Cleveland* (1962), 89 Ohio Law Abs. 1, appeal dismissed (1962), 371 U.S. 68. See, also, *Hawaii Housing Authority v. Midkiff* (1984), 467 U.S. 229; *Berman v. Parker* (1954), 348 U.S. 26. Hence, a court reviewing a legislative determination to take private property for a public purpose is limited to consideration of whether the legislative body acted in bad faith, fraudulently or abused its discretion. R.C. 163.09(B); *State, ex rel. Gordon v. Rhodes, supra*; *Holding Corp. of Ohio, supra*; *Ohio Power Co. v. Diller* (1969), 18 Ohio App. 2d 167. See, also, *Neiswender v. Edinger* (1978), 59 Ohio App. 2d 25. In this case, the owners only argue that the City abused its discretion.

An abuse of discretion is more than error of law or judgment, it connotes an unreasonable, arbitrary or unconscionable attitude on the part of the legislative body making the appropriation. *Ohio Power Co. v. Diller, supra*; *Ferenez, supra*. See, also, *Cleveland Electric Illuminating v. Scapell* (1975), 44 Ohio App. 2d 13.

The owners argue that this court should give the legislative actions of the Pepper Pike City Council less deference than would be given state or federal legislation. It is well-settled that the power of eminent domain is a power of local self-government and that a municipality may exercise that power within lawful purposes of city government. *State, ex rel. Bruestle*, v. *Rich* (1953), 159 Ohio St. 13. Municipal actions taken in lawful exercise of the police power are given the same deference by courts as are similar state actions. Cf. *Hawaii Housing Authority v. Midkiff, supra*; *Ohio Power Corp., supra*; *State, ex rel. Ohio Civil Serv. Emp. Assn., v. Coshocton* (1982), 5 Ohio App. 3d 5, 8; *Grisanti v. Cleveland, supra*.

Necessity and the right to take property are associated. *Holding Corp. of Ohio, supra*, at 119. The necessity which is essential for appropriating property includes not only what is absolutely necessary, but also what is "reasonably convenient or useful to the public." *Dayton v. Keys* (1969), 21 Ohio Misc. 105, 112 citing *Slother v. Ohio Turnpike Commission* (1953), 99 Ohio App. 228.

Our review of the record reveals that there was sufficient competent, credible evidence upon which the court could find that the City's acquisition of the property for the service road was necessary to reduce non-residential traffic on Creekside Drive and to make the treatment plant accessible by multiple routes. See *C.E. Morris v. Foley Const. Co.* (1978), 54 Ohio St. 2d 279, syllabus. As we noted earlier, Resolution No. 1988-05 contained council's reasons for constructing the service drive. After a review of the record, we conclude that the owners failed to produce competent, credible evidence to rebut the *prima facie* evidence of necessity created by council's enactment of the resolution of intent.

The property owners first argue that the reference in the resolution to relieving non-residential traffic of Creekside Drive is a sham. Pepper Pike Mayor John Avery told the court that the Ohio E.P.A. advised the City that the treatment plant would require expansion every five to seven years necessitating construction traffic. Moreover, the treatment facility is presently visited by maintenance

vehicles and a truck removing sludge uses the Creekside Drive entrance about once per week. The owners offered evidence that no accident had been recorded on Creekside for twenty-eight years. The owners' traffic expert, however, acknowledged that removing one unit of hazard from the street would result in an equivalent reduction in traffic hazards. A City may choose to correct a problem step by step and need not correct all of a problem at once. See *Porter* v. *Oberlin, supra,* at paragraph four of the syllabus.

The property owners next allege that the City's plans for expansion of the treatment plant are mere speculation. Assuming, *arguendo,* that the expansion plans are prospective, it appears that the service drive will serve a public convenience by eliminating traffic on a residential street and by providing a convenient access way to the plant and, therefore, the proposed service drive serves a public purpose. Cf. *O'Neil* v. *Bd. of Cty. Commissioners* (1965), 3 Ohio St. 2d 53 (public use may not be based solely on a contingent or prospective use).

The owners finally take issue with the City's findings that Creekside Drive's narrow pavement surface creates a safety hazard for passing vehicles and for pedestrians using the street as a walkway. They claim that there is a cheaper way to solve motorists' passing problem on Creekside and that the pedestrian problem is non-existent because Pepper Pike residents do not walk on the streets. Since the property owners elicited no evidence supporting these claims, they failed to rebut the City's *prima facie* evidence of necessity.

In view of the foregoing, we find that the judgment of the probate court is supported by sufficient evidence of manifest weight.

Accordingly, the owners' sole assignment of error fails.

## II

The taxpayer, in his only assigned error, contends that the common pleas court erred by granting the City's summary judgment motion on the grounds of *res judicata.* He maintains that he was not a party to the appropriation proceeding and that the matters adjudicated in the probate court are not the same as those issues raised in his effort to bar the expenditure of funds.

The gravamen of the taxpayer's complaint was that the proposed service drive was "unnecessary from a financial, environmental and practical point of view." He posited that the City's decision to appropriate property and construct a new service drive to the treatment plant constituted a misapplication of funds.

The doctrine of *res judicata* involves two legal concepts: issue preclusion and claim preclusion. *Norwood* v. *MacDonald* (1943), 142 Ohio St. 299. Claim preclusion or estoppel by judgment prevents a party from relitigating the same cause of action against the same defendant. *Whitehead* v. *Gen. Tel Co.* (1969), 20 Ohio St. 2d 108. Issue preclusion or collateral estoppel "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based upon a different cause of action." *Whitehead, supra,* at 112. To successfully assert a claim of collateral estoppel the defendant must show: (1) he was a party to the previous action; (2) after a full and fair opportunity to be heard on the issue, there was a final judgment on the merits in the prior case; (3) the issue must have been admitted or actually tried and decided and be necessary to the final judgment; and (4) the issues involved must be identical to those in the prior suit. *Monahan* v. *Eagle Picher Industries, Inc.* (1984), 21 Ohio App. 3d 179.

The taxpayer claimed that, as such, he had a private right to relitigate the same issue determined by the probate court in the appropriation proceeding. It is generally accepted that, absent fraud or collusion, a judgment for or against a municipal corporation is binding and conclusive as *res judicata* on "all residents, citizens and taxpayers with respect to the matters adjudicated which are of general and public interest ***." *Cincinnati, ex rel Crotty,* v. *Cincinnati* (1977), 50 Ohio St. 2d 27, 28 (footnotes omitted). See, also, *Stromberg* v. *Bd. of Education* (1980), 64 Ohio St. 2d 98, 101. We note that the taxpayer claimed no injury that would not be shared with all citizens and taxpayers of the city. See *State, ex rel. Masterson,* v. *Ohio State Racing Comm.* (1954), 162 Ohio St. 366.

In the appropriation proceedings, which were contested pursuant to R.C. 163.07(B), the probate court found that the only issue before it was whether the city council abused its discretion by authorizing the acquisition of private property to construct a service drive. As we have already stated, the City's action was neither arbitrary, capricious nor unreasonable and was therefore proper. The evidence presented to the probate court included the

alternatives considered by the City for the road, the projected project costs, as well as the safety and public welfare issues pertinent to the trial court's decision that the appropriation of the defendant owners' land was necessary. Thus, the same facts or evidence sustaining the issue of necessity in the appropriation action also sustain the issue of necessity in the taxpayer's claim for misapplication of funds. See *Norwood* v. *MacDonald, supra.* See, also, *Ohio Fuel Gas Co.* v. *Mt. Vernon* (1930), 37 Ohio App. 159. We hold that the trial court properly granted the City's motion for summary judgment.

The taxpayer's assignment of error fails.

### III

The *amicus curiae* briefs cover issues raised in both appeals: the use of eminent domain for private purposes, *res judicata* and collateral estoppel. They also ask us to consider theories of nuisance and extraterritorial effects of the use of the appropriated property which are not raised by the parties. We recognize that the appearance of *amicus curiae* is permitted for the purpose of assisting the court on matters of law about which the court is doubtful. *City of Columbus* v. *Tullos* (1964), 1 Ohio App. 2d 107. *Amicus curiae* have no right to become a party to an action and may not, therefore, interject issues and claims not raised by the parties. See *Board of Commissioners* v. *Coopers Unknown Heir* (1947), 50 Ohio Law Abs. 20. Accordingly, we decline to address the additional issues argued by the *amicus curiae.*

The judgments of the probate and common pleas courts are affirmed.

*Judgment affirmed*

It is ordered that appellee recover of appellants their costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KRUPANSKY, P.J., NAHRA, J., Concur